**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FRED CLAYWORTH,

    Plaintiff,

    v.

LUZERNE COUNTY, et al.,

    Defendants.

CIVIL ACTION NO. 3:11-CV-254

(JUDGE CAPUTO)

## MEMORANDUM

Plaintiff Fred Clayworth alleges that Defendant social workers conspired to prevent him from raising his daughter, G.H. After eventually gaining custody of his daughter, Clayworth filed a Complaint against the social workers, their supervisor, the county, and the Luzerne County Children & Youth Services Agency. (Doc. 1). The Defendants moved to dismiss that Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), (Doc. 8), which the Court granted, (Doc. 18). The Court gave Clayworth leave to file an Amended Complaint alleging well-pleaded facts showing entitlement to relief. The Amended Complaint is now before the Court, (Doc. 19), and the Defendants have again motioned for dismissal, (Doc. 20). For the reasons stated below, the Court will dismiss Clayworth's Amended Complaint.

## Background

Clayworth alleges the following. Upon her birth on November 30, 2004, G.H.'s unwed mother placed her with Luzerne County Children & Youth Services (CYS). Fred Clayworth, G.H.'s natural father, informed CYS that he believed himself to be G.H.'s father, and that he desired to raise her. Clayworth obtained a lab report confirming that he was in fact G.H.'s

father, and the Defendants had actual knowledge of that fact. Defendants also had no evidence that G.H. would be in any danger if placed with Clayworth, or that any of G.H.'s best interests would be severed by placing her with anyone other than Clayworth. Nevertheless, G.H. was placed in foster care. The reason for this was "defendants' subjective, arbitrary and capricious decision that they personally liked foster parents more than they liked Mr. Clayworth." (Am. Compl. at ¶ 28, Doc. 19). It was also based on CYS's policy that single fathers were not appropriate parents for raising children. (*Id.* at ¶ 39).

Clayworth was informed that he required supportive services in order to raise G.H.–a fabricated assessment which only reflected Defendants view that Clayworth was not a worthy parent. In fact, it was CYS's goal to see Clayworth's parental rights terminated. He was subjected to a battery of drug and alcohol tests, psychological examinations, psychotherapy, court proceedings, and parenting classes. He had only limited and supervised access to G.H., and these visits were frequently canceled. His caseworkers also rebuffed Clayworth's family members offers to care for G.H.

Clayworth fought to gain custody of his daughter. After retaining several attorneys, incurring substantial legal fees, and dedicating four-and-a-half years to the effort, Clayworth gained permanent custody of G.H. on May 29, 2009. G.H. was approximately four-and-a-half by that time.

Clayworth files this Amended Complaint under 42 U.S.C. § 1983 against Luzerne County, CYS, his caseworkers, and their supervisor. (Doc. 19). He alleges that the individual defendants conspired to infringe on his liberty interest in the custody and care of his daughter in violation of the First, Ninth, and Fourteenth Amendments. He also claims that the county, CYS, and Supervisor Castano are liable based on their failure to properly

2

train their employees to not violate such constitutional rights, and their policy of presuming that single fathers were unfit custodial parents.

Following the Court's initial determination that the original Complaint failed to allege sufficient facts to show that the Defendants invaded the Plaintiff's protected liberty interest in a manner that shocked the conscience (Doc. 18 at 20), Plaintiff has filed an Amended Complaint. (Doc. 19). The motion to dismiss has been fully briefed and is ripe for review.

## Discussion

### I. Legal Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler*

3

*v. UPMC Shadyside*, 578 F.3d 203, 211.  Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the

4

motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

**II. The Complaint Fails to State a Substantive Due Process Claim Under the Fourteenth Amendment**[1]

A substantive due process claim requires a showing that a defendant deprived the plaintiff of a protected property or liberty interest and that the deprivation "shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). Such a protected liberty exists for parents as to "the custody, care and management of their children." *Croft v. Westmoreland County CYS*, 103 F.3d 1123, 1125 (3d Cir. 1997) (citing *Lehr v. Robertson*, 463 U.S. 248, 258 (1983)). Thus, in determining whether an intrusion into the parent-child relationship is justified, courts must balance the fundamental liberty interest inherent to the family unit against the compelling government interest in protecting children from harm. *Id.* at 1125. However, a state "has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id.* at 1126.

In the context of a social worker acting to separate parent and child, the standard of

---

[1] Clayworth's First Amendment claim similarly fails. As the Court stated in its prior Order, while the right of expressive association in pursuit of "a wide variety of political, social, economic, educational, religious, and cultural ends" is anchored in the First Amendment, the right to intimate association with family members that the plaintiff here asserts is anchored in the Fourteenth—not First—Amendment. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617–20 (1984).

culpability for a substantive due process violation "must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999). The "state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse," *Croft*, 103 F.3d at 1126, and as such, a social worker's conduct shocks the conscience where they have "consciously disregarded a great risk that there had been no abuse." *Ziccardi v. City of Phila.*, 288 F.3d 57, 66 (3d Cir. 2002)).

Here, Clayworth does not allege that the Defendants acted to separate him from G.H., but that he was denied custody as her biological father. Such a custody proceeding focuses on the best interests of the child. *See McMillen v. McMillen*, 602 A.2d 845, 846 (Pa. 1992). Parenthood is a weighty factor in awarding custody, but it is not dispositive. *Vicki N. v. Josephine N.*, 649 A.2d 709 (Pa. Super. Ct. 1994) (mother's inability to care for child while undergoing chemotherapy supported awarding custody to child's aunt). While the strong presumption that a parent has a right to custody as against third parties tips the scales firmly in favor of the parents, the focus is on the child's best interests and may include factors such as "the length of time the child has been separated from the party seeking custody; the adverse effect on the child caused by disruption of an established relationship; and the fitness of the party seeking custody." *Richards v. Hepfer*, 764 A.2d 623, 624–25 (Pa. Super 2000) (internal citations omitted). Thus, whether Clayworth had abused or was likely to abuse his daughter are not the only relevant factors in determining whether he should be awarded custody.

The crux of Clayworth's claim is that the Defendants, knowing that he had no history of abusiveness or chemical dependency, endeavored upon a four-year collective effort to terminate his parental rights because they did not like him.  Specifically, Clayworth avers that "[t]here were no existing facts which could lead to the conclusion that G.H.'s 'best interests,' within the meaning of the law, were to remain separated from her natural father."  (Am. Compl. at ¶ 28, Doc. 19).  However, Clayworth's conclusion that the defendants had come to an "arbitrary and capricious decision that they personally liked foster parents more than they liked Mr. Clayworth" is conclusory and is not borne out by the pleaded facts.  (*Id.* at ¶ 28).  Moreover, he does not plead any affirmative actions on the part of Defendants that could be sufficiently arbitrary as to shock the conscience.  Instead, Clayworth concludes that their negative assessment of him was "merely a subjective belief," incongruent with a lack of "history of anything improper."  (*Id.* at ¶ 54).  As noted above, there are a multitude of factors that should be considered when awarding child custody, and from the pleadings there are no averments that would suggest that, in declining to award Clayworth custody, any of the caseworkers acted in such an arbitrary manner as to shock the conscience.  Thus, Clayworth has not "shown," by alleging facts the Court accepts as true, that he is entitled to relief.  *See Iqbal*, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Thus, the Fourteenth Amendment substantive due process claim will be dismissed.

**III. The Complaint Fails to State a Ninth Amendment Claim**

Clayworth's Ninth Amendment claim also fails as it is not a sufficient cause of action under 42 U.S.C. § 1983. *Soder v. Chenot*, Civil No. 4:CV-06-1522, 2007 WL 4556670 at *4 (M.D. Pa. Dec. 20, 2007) ("The Ninth Amendment . . . by itself does not confer substantive rights for purposes of § 1983."). The Ninth Amendment, taken alone, "does not independently provide a source of individual constitutional rights." *Perry v. Lackawanna County Children & Youth Servs.*, 345 Fed. Appx. 723, 726 (3d Cir. 2009) (citing *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007) and *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991)).

The Ninth Amendment ("Rights retained by people") states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. As such, it is a rule of construction applied to the other provisions of the Constitution. *Kuromiya v. United States*, 37 F. Supp. 2d 717, 725 (E.D. Pa. 1999); *Soder*, 2007 WL 1098970 at *4. Thus, while the Ninth Amendment helped foster the right to raise one's children, the actionable right shall proceed upon the Fourteenth Amendment. *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment." (citations omitted)). Therefore, Clayworth's Ninth Amendment claim will also be dismissed.

**IV**. **The Individual Defendants are Entitled to Immunity**

The Defendants contend that they are entitled to qualified immunity as they "cannot be held liable for violating Plaintiff's constitutional rights for doing what the Court of Common

Pleas ordered them to do." (Doc. 29 at 12). "Qualified immunity is intended to shield government officials performing discretionary functions . . . 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining the existence of qualified immunity is a two-step inquiry: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Bell v. Township of Concord*, 795 F.Supp.2d 621, 630 n.6 (E.D. Pa. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Even unlawful actions can receive such immunity if an official "could have reasonably believed that his or her actions were lawful." *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148 (3d Cir. 2002). Defendants argue that "[n]o reasonable person would believe that he or she could be held liable for violating someone's constitutional rights for complying with a duly-issued Court Order." (Doc. 23 at 26).

     The Court finds this to be true. "It is well-settled that "action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages." *McGeachy v. Doe*, No. 11–2798, 2011 WL 4362141 at *2 (citing *Hamilton v. Leavy*, 322 F.3d 776, 782–83 (3d Cir.2003)). Thus, to the extent that the Defendants' allegedly unconstitutional actions were ordered by a state court, they will be entitled to immunity. *See e.g. Rivera v. Algarin*, 350 Fed. Appx. 703, 709 (3d Cir. 2009) (finding no cause of action under Section 1983 for an unconstitutional detainment where the warden acted pursuant to a state court order). Determining such immunity is a question of law that may

involve factual determinations.  *Hamilton*, 322 F.3d at 783.

The Defendants argue that the harms Clayworth complains of–the hurdles placed between him and his daughter–were ordered by the Court of Common pleas and are thus entitled to immunity.  The Court agrees.  From the attached orders of the Common Pleas Court,[2] it is clear that Clayworth was ordered to engage in parenting classes and various mental health and substance abuse evaluations. (Doc. 17-5 at 30, Def.'s Ex. A).  Moreover, Clayworth avers that "[t]here were no existing facts which could lead to the conclusion that G.H.'s 'best interests,' within the meaning of the law, were to remain separated from her natural father Mr. Clayworth."  (Am. Compl. at ¶ 28, Doc. 19).  Yet, this was also a determination affirmed by the Court of Common Pleas.  (Doc. 17-2 at 41-42, Def.'s Ex. A).  Therefore, as these alleged violations were ordered by the Court of Common Pleas, it is true that the individual Defendants are immune from carrying them out.[3]

Even in the absence of any immunity doctrine, Defendants' argument is sensible from a functional standpoint–they are simply are not responsible for the harm Clayworth claims when it was implemented by the Court of Common Pleas.  *See e.g. Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 729 (6th Cir. 2011) (finding a case worker could not be liable for a violation of a father's substantive due process parental rights

---

[2] In deciding a motion to dismiss, a district court may take judicial notice of prior judicial opinions.  *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

[3] Additionally, to any extent the Defendants could be liable for their actions taken before the Court of Common Pleas, they are also immune.  The Third Circuit has held that CYS caseworkers are entitled to absolute immunity for "their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings," including their formulation and presentation of recommendations to the court.  *Ernst v. Child & Youth Services of Chester County*, 108 F.3d 486, 495 (3d Cir. 1997).

where the deprivation was caused by the juvenile court, not the social worker, even where misconduct was alleged at the proceedings). As the individual defendants cannot be liable for the constitutional harms alleged, the Court will dismiss them from this action.

**V. Plaintiff Fails to Allege a Claim Against Castano**

The Defendants argue that Clayworth has failed to set out any allegations against Defendant Castano, the Director of CYS. It is true that Section 1983 prohibits vicarious liability. *Argueta v. United States Immigration & Customs Enforcement*, 643 F.3d 60, 71 (3d Cir. 2011). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009)). These individual actions can be indirect, shown through "actual knowledge and acquiescence" to constitutional violations. *Id.* at 72 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). This includes a "failure to train, supervise, and discipline subordinates," or declining to amend an unconstitutional policy or implement corrective action. *Id.* Conversely, violations can occur through direct supervisor action, such as "implement[ing] a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." *Id.*

Under either theory of liability, Clayworth has failed to state a claim against Defendant Castano. Under a theory of knowledge and acquiescence, Clayworth has failed to allege that Castano actually knew of or acquiesced to the violations of the CYS staff. *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Instead, Clayworth

11

concludes that Castano had "the power to create or to dismantle policies and customs of Luzerne County CYS," (Am. Compl. at ¶ 4, Doc. 2), and that his "level of non-training violates the constitutional rights of parents and children, including Mr. Clayworth and G.H." (*Id.* at ¶ 30). He further avers that Castano did not have "articulated standards or criteria as to whether to remove children from a parent or as to whether to return a child to a parent," and that there was no supervision to ensure that CYS employees "were acting in accordance with constitutional standards." (*Id.* at ¶¶ 31-32). Yet, the Court finds that this is an attempt to attach prohibited vicarious liability to Castano. Even taking all of Clayworth's allegations as true, there are no averments that could indicate that Castano was at all aware of the constitutional violations Clayworth claims.[4] And, merely concluding that Castano "either created them or chose to permit them," (*Id.* at ¶ 101), is not a sufficiently particularized allegation to overcome this infirmity. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity."). Finally, as noted above, it would have been impossible for Castano to have been aware of the constitutional violations of his employees in Clayworth's case as the alleged deprivation was created by the Court of Common Pleas, not CYS.[5]

---

[4]The one allegation that could suggest that Castano had knowledge of the problems within CYS is that the agency had "done nothing to address the complaints about unfavorable treatment of fathers." (Am. Compl. at ¶ 37, Doc. 19). However, this is insufficiently particularized as to implicate Castano.

[5]This conclusion similarly applies to Clayworth's claim that Castano had tolerated a policy that single fathers were not appropriate parents. His allegation that individuals have been retaliated against for suggesting the existence of this policy is a legal conclusion that does little to bolster his claim, and there is no suggestion that Castano was aware of the constitutional violations said to have occurred. Finally, even if the agency did harbor such an animus, the constitutional wrong was ultimately committed by the Court of Common Pleas, not CYS.

Clayworth has also failed to plead supervisor liability on a theory of direct supervisor action. Such liability can only attach where the supervisor has "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This requires a showing that the policymaker "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Yet, nowhere in the Amended Complaint does it state that Castano acted with culpable indifference, or acted at all. Again, it was the Court of Common Pleas, not Castano, that was the moving force of the alleged violation.

Therefore, the Court agrees that Clayworth has failed to properly plead a claim against Defendant Castano and he will be dismissed.

**VI. Plaintiff Fails to Allege Sufficient Facts As Against CYS**

As to the remaining Defendant, Luzerne County Children & Youth Services, the Court finds that Plaintiff's *Monell* claim must also fail. Municipalities and local government units cannot be held liable under § 1983 on a theory of respondiat superior. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). It is only when the "execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality's failure to train resulting in a constitutional violation can establish a *Monell* claim. *Berg v. County of Allegheny*, 219 F.3d 261 (3d Cir. 2000). The

Defendants argue that, as they have not violated the Plaintiff's rights, that there can be no liability for CYS.

The Court agrees. In the absence of an underlying violation by the individual state actors, *Monell* liability cannot stand. *Grazier v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) (disallowing liability on a failure to train theory where a jury determined that the underlying conduct did not violate a plaintiff's constitutional rights). As the Court has determined above that the CYS employees are not responsible for the Clayworth's alleged harms, there can be no liability for CYS on a theory of failing to train or supervise. Clayworth's claim as against CYS will be dismissed.[6]

## VII. Leave to Amend Will Not Be Granted

Of course, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted). Furthermore, Federal Rule of Civil Procedure 15(a) directs the Court to "freely give leave when justice so requires." This principle applies equally in situations where a Plaintiff does not affirmatively seek leave to amend. *Phillips*, 515 F.3d at 245.

Here, the basis for dismissal is not based merely on a lack of factual specificity. *Cf. Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1995) ("[W]hen an individual has filed a complaint under § 1983 which is dismissable for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can."). Instead, Clayworth cannot state a

---

[6]Luzerne County will be dismissed for the same reasons as Plaintiff agrees that Luzerne County is a redundant and unnecessary Defendant along with Luzerne County Children & Youth Services. (Doc. 26 at 27-28 n. 14).

14

claim upon which relief can be granted as to the named Defendants, so "amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Because the Court finds amendment would be futile, leave to amend will not be granted.

## **Conclusion**

The Court will grant the Defendants' Motion to Dismiss Clayworth's Amended Complaint. (Doc. 20). The Court bases this determination primarily on a finding that Clayworth has failed to property plead harms under the First, Ninth, and Fourteenth Amendments, as well as the existence of immunity for the individual defendants. As further amendment would be futile, the Court will not grant further leave to amend. An appropriate order follows.


 December 6, 2011                                                     /s/ A. Richard Caputo
Date                                                                              A. Richard Caputo
                                                                                      United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRED CLAYWORTH,<br><br>     Plaintiff<br><br>          v.<br><br>LUZERNE COUNTY, et al.,<br><br>     Defendants. | NO. 3:11-CV-254<br><br>(JUDGE CAPUTO) |

## ORDER

**NOW**, this 6th day of December, 2011, **IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss (Doc. 20) is **GRANTED** and Plaintiff's Amended Complaint (Doc. 19) is **DISMISSED**. The Clerk of Court is directed to mark the case as **CLOSED**.

                                                  /s/ A. Richard Caputo  
                                                  A. Richard Caputo  
                                                  United States District Judge